**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
HOME LOAN INVESTMENT BANK, F.S.B.
formerly known as Ocean Bank, F.S.B.

                        Plaintiff,

                        **REPORT AND**
                        **RECOMMENDATION**

      - against -

                        CV 11-1107 (DRH) (AKT)

LEMANS PROPERTIES, LLC, LEMANS
INDUSTRIES CORP., GLENN W. MANDLER,
BOARD OF MANAGERS OF HEISSER
INDUSTRIAL PLAZA CONDOMINIUM,
JOHN DOES NOS. 1-100,

                       Defendants.
-----------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

Plaintiff Home Loan Investment Bank F.S.B. ("Plaintiff" or "Home Loan" or "Lender") commenced this diversity action against Defendants Lemans Properties, LLC, Lemans Industries Corp., Glenn W. Mandler, Board of Managers of Heisser Industrial Plaza Condominium, and John Does 1-100 pursuant to New York Property Actions and Proceedings Law, Section 1301 *et seq.* to foreclose on two properties pursuant to Article 9 of the New York Uniform Commercial Code. Plaintiff moved for entry of default against Defendants Lemans Properties, LLC ("Lemans Properties") and Lemans Industries Corp. ("Lemans Industries," and, together with Lemans Properties, "Lemans" or "Borrower(s)") after they failed to answer or otherwise move in response to the Complaint. DE 4. Plaintiff then moved for a default judgment against all Defendants. DE 10. The motion was denied because a default had only been entered against Lemans. *See* June 16, 2011 Electronic Order. Thereafter, on Plaintiff's motion, a notation of

default was entered against Defendant Glenn W. Mandler ("Mandler") and Defendant Board of Managers of Heisser Industrial Plaza Condominium ("Heisser Industrial"). DE 12, 14. Judge Hurley entered a default judgment against Defendants and referred this matter to me for an inquest to determine and recommend what damages, if any, are appropriate, including attorney's fees. *See* July 26, 2011 Electronic Order.

## II. BACKGROUND

Lemans Properties and Lemans Industries are co-borrowers on a U.S. Small Business Administration loan in the amount of $375,000.00 plus interest (the "Loan"), evidenced by a note dated January 7, 2009 (the "Note"). *See* Compl. Ex. B.[1] The note was secured by a property located at 79 Heisser Court, Unit 20, Farmingdale, Nassau County, New York 11735 (the "Heisser Property") through a Security Agreement and a Mortgage and Security Agreement (the "Heisser Mortgage Agreement") executed by the Plaintiff and Lemans Properties. *See id.*, Exs. C, D. Defendant Mandler also executed an unconditional personal guarantee of all payments owing under the Note (the "Guarantee"). *See id.*, Ex. F.[2] Mandler's obligations under the Guarantee were secured by Mandler's properly located at 620 Noyack Road, Southhampton,

---

[1] The Court notes that the exhibits attached to the Complaint are out of order and do not correspond to the exhibit references in the Complaint.

[2] The Complaint also alleges that the Note was secured by Lemans Industries' equipment, inventory, fixtures, and accounts receivable. *See* Compl. ¶ 15. The collateral referred to in the agreement purporting to reflect this (which is referred to in the Complaint as Exhibit F, but which the Court understands to be Exhibit E) is not Lemans Industries' equipment, inventory, fixtures, and accounts receivable, but rather the Heisser Property. The Court also notes that the SBA Loan Number on Exhibit E differs from the SBA Loan Number on the Note and on all of the other loan documents. Moreover, Plaintiff does not reference this document in the statement of damages submitted by Plaintiff [DE 24]; thus, the Court assumes this allegation was mistakenly included and that Plaintiff is not seeking to foreclose on this additional collateral.

Suffolk County, New York 11968 (the "Noyack Property" and, together with the Heisser Property, the "Properties") through a Collateral Mortgage agreement (the "Noyack Mortgage Agreement"). *See id.*, Ex. G. Defendant Heisser Industrial is, on information and belief, the holder of a lien against one of the Properties resulting from unpaid condominium charges. *See id*. ¶ 8.

Pursuant to the Note, Lemans was obligated to pay monthly installments of principal and interest commencing two months after the date the loan was issued. Plaintiff alleges that Lemans defaulted on the loan when it failed to make payments in the months of October 2010, November 2010, December 2010, January 2011, and February 2011. *Id.* ¶ 26. By letter dated January 4, 2011, Plaintiff notified Lemans and Mandler that Lemans was in default and that Plaintiff was accelerating the sums due as permitted by the terms of the Note. *Id.*, Ex. H. In that letter, Plaintiff demanded the entire unpaid balance of $385,402.32. Plaintiff alleges that Lemans failed to make the payment and Plaintiff initiated this action on March 8, 2011 to recover the amounts then due on the Loan. Plaintiff seeks a judgment of foreclosure and sale of the Properties and also a money judgment for any deficiency remaining after the sale of the Properties.

## III. APPLICABLE STANDARD

A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true. *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir.

3

1992)), *cert. denied*, 506 U.S. 1080 (1993)); *BMG Music v. Pena*, No. 05-CV-2310, 2007 WL 2089367, at *2 (E.D.N.Y. July 19, 2007).

A default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability. *See Garden City Boxing Club, Inc. v. Morales*, No. 05-CV-0064, 2005 WL 2476264, at *3 (E.D.N.Y. Oct. 7, 2005) (citing *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995)). The only question remaining, then, is whether Plaintiff has provided adequate support for the relief it seeks. *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. The moving party need only prove "that the compensation sought relate to the damages that naturally flow from the injuries pleaded." *Id.* at 159.

In determining damages not susceptible to simple mathematical calculations, Federal Rule 55(b)(2) gives courts discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. *Action S.A. v. Marc Rich and Co., Inc.,* 951 F.2d 504, 508 (2d Cir. 1989). The moving party is entitled to all reasonable inferences from the evidence it offers. *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981).

## IV.    DAMAGES

Plaintiff has submitted the following documents in support of its request for an award of damages: (A) the July 5, 2011 Declaration of Attorney Patrick J. Sweeney ("Sweeney Decl.") [DE 16] with exhibits, including a pay-off statement of the loan as of June 15, 2011; (B) an August 31, 2011 letter from Attorney Sweeney attaching information on the historical prime rate as published in the *Wall Street Journal* [DE 23]; (C) the August 31, 2011 Declaration of Home Loan commercial workout manager Peter St. Jean ("St. Jean Decl.") [DE 24] with exhibits,

4

including copies of (1) the Note, (2) the Heisser Mortgage Agreement, (3) the Guarantee, (4) the Noyack Mortgage Agreement, and (5) a loan transcript reflecting the credits and debits to the loan (the "Loan Transcript"); and (D) the August 31, 2011 Declaration of Attorney John M. Toriello (the "Toriello Decl.") [DE 25] and exhibits thereto attaching documentation regarding attorney's fees and costs incurred in this action.

The Court finds Plaintiff's submissions to be sufficient evidence to form the basis for an award of damages. The following discussion sets forth the amount of damages to which Plaintiff is entitled based upon the information contained in Plaintiff's submissions which have now been evaluated by the Court. Plaintiff seeks: (1) a money judgment in the amount of $412,027.26 owed on the Note plus additional accrued interest, *see* St. Jean Decl. ¶ 14 and $43,131.45 in attorney's fees and costs, Toriello Decl. ¶ 3, against Defendants Lemans and Mandler; and 2) an order of foreclosure and sale of the Properties in the manner set forth in the Proposed Judgment submitted by Plaintiff, *see* DE 16, Ex. 3.[3]

### A. Principal and Interest Due on the Note

Plaintiff seeks $364,890.37 in principal owed on the Note. The Note provides that in return for the loan, Lemans "promises to pay to the order of Lender the amount of Three Hundred Seventy Five Thousand and 00/100 . . . Dollars, interest on the unpaid principal balance, and all other amounts required by this Note." St. Jean Decl., Ex. 1 at 1. The Note further provides that Lemans must make monthly installment payments of $2,710.53 and that Home Loans "will apply each installment payment first to pay interest accrued to the day Lender receives the payment,

---

[3] Although Plaintiff moved for entry of default against Defendant Heisser, the Court assumes Plaintiff is not seeking any damages from that entity. This assumption is based on Plaintiff's failure to submit any documentation or explanation of amounts owed by Heisser.

then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal." *Id.* at 2. The Loan Transcript, a document kept and updated in the regular course of business by Home Loans to reflect payments, credits, debits, and changes in interest rate to the Loan, shows that Lemans made payments totaling $10,109.63 which were applied to principal reduction. *See* St. Jean Decl. ¶ 12; Ex. 5. Thus, the amount of principal owed by Lemans is $364,890.37.

As to interest, the Note provides that after the initial "change period" or calendar quarter during which the interest rate is 7.25% per year, interest on the Loan accrues at the "Prime Rate plus 2.75%" and is adjusted every calendar quarter. *Id.*, Ex. 1 at 2.[4] The "Prime Rate" is defined as the "prime rate in effect on the first business day of the month in which an interest rate change occurs, as published in the *Wall Street Journal* on the next business day." *Id.* The first date after the initial change period was April 9, 2009 and, according to documents submitted by Plaintiff, the prime rate published in the *Wall Street Journal* in effect on April 1, 2009 was 3.25%. *See* DE 23. The Court has reviewed the prime rate in effect from April 1, 2009 through the present time as published in the *Wall Street Journal* and observed that the prime rate has remained at 3.25% throughout the entire period.[5] Thus, the interest rate on the Loan since April 1, 2009 is 6.00%. The Loan Transcript reflects that Lemans was current on its interest payments for the period of

---

[4] The Note does not specify whether the "Prime Rate plus 2.75%" accrues per year, but given that the initial rate accrues per year, it is reasonable to assume that the interest after that period also accrues on a yearly basis. *See LaBarbera v. Almar Plumbing & Heating Corp.*, No. 07-CV-4697, 2008 WL 3887601, at *3 n.5 (E.D.N.Y. Aug. 20, 2008) (assuming that interest rate in contract referred to simple, not compound interest).

[5] The Court can take judicial notice of the prime rates published in the *Wall Street Journal*. *See Ames v. Dynasty Electric, Inc.*, No. 05-CV-988, 2008 WL 1924276, at *6 (E.D.N.Y. 2008); *Stein v. JP Morgan Chase Bank*, 279 F. Supp. 2d 286, 290 (S.D.N.Y. 2003).

January 7, 2009 through October 30, 2010. St. Jean Decl., Ex. 5. On October 31, 2010, the principal due was $364,890.37. Consequently, the annual interest due was $21,893.42 ($364,890.37 x .06) and the per diem amount of interest owed from October 31, 2010 until final judgment is entered is $59.98 ($21,893.42/365).

Lemans also owes late fees on the Note. The Note provides that "payments must be made on the first day of the calendar month in the months they are due." St. Jean. Decl., Ex. 1 at 2. The Note further provides that "[i]f a payment on this Note is more than 10 days late, Lender may charge Borrower a late fee up to 5.00% of the unpaid portion of the regularly scheduled payment." *Id.* The Heisser Mortgage Agreement and the Noyack Mortgage Agreement contain similar provisions. *See id.*, Ex. 2 § 2.8, Ex. 4 § 17. The Loan Transcript reflects that late charges were assessed in the amount of $121.20 on February 11, 2010, October 11, 2010, November 11, 2010, December 11, 2010 and January 11, 2011; $121.84 on February 11, 2011, April 11, 2011, May 11, 2011, June 11, 2011, July 11, 2011; and $121.85 on March 11, 2011 and August 11, 2011 for a total of $1,458.90 (not the $1,458.09 that Plaintiff calculates, *see* St. Jean Decl. ¶ 19). The Loan Transcript also reflects that Lemans paid one of the $1,21.20 late fees. The Court has reviewed the Loan Transcript and determined that each late fee was no more than five percent (5%) of the overdue payment at the time and that each late fee was assessed at least ten days after Lemans failed to make a monthly payment. Thus, Lemans owes late fees in the amount of $1,337.70.

Lemans' obligations under the Note were personally guaranteed by Defendant Mandler. The Guarantee executed by Defendant Mandler states that:

> Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

St. Jean Decl., Ex. 3. On January 4, 2011, after Lemans failed to make payments due on the Note, Plaintiff demanded payment from Mandler. *See* Compl., Ex. H. Mandler failed to make payment, *see* Compl. ¶ 41, and is therefore liable for the amounts due on the Note.

Based on the foregoing, I respectfully recommend to Judge Hurley that damages in the amount of $366,228.07 ($364,890.37 in principal + $1,337.70 in late fees) plus interest at a rate $59.98 per diem from October 31, 2010 until final judgment is entered be awarded against Defendants Lemans and Mandler.

### B. Miscellaneous Fees and Attorney's Fees and Costs

Plaintiff also seeks miscellaneous fees, including attorney's fees. The Note provides that the Lender may:

> [i]ncur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance . . . .

St. Jean Decl., Ex. 1 § 6.B.

Similarly, the Heiser Mortgage Agreement provides, in pertinent part, as follows:

> Mortgagor shall pay on demand all expenses of the Lender in connection with the preparation, administration, default, collection, waiver or amendment of loan terms, or in connection with the

8

> Lender's exercise, preservation or enforcement of any rights, remedies or options hereunder, including, without limitation, fees of outside legal counsel or the allocated costs of in-house legal counsel, accounting, consulting, brokerage or other similar professional fees or expenses, any fees or expenses associated with recording, title, escrow, inspection, travel or other costs relating to any appraisals or examinations conducted in connection with the loan or any collateral therefor, and all other costs and expenses of every character which have been incurred or which may hereafter be incurred by Lender in connection with the loan . . . .[6]

*Id.*, Ex. 2 § 3.15. The Noyack Mortgage Agreement contains a similar provision for costs and expenses, including attorney's fees, arising out of a default on the Note. *See id.*, Ex. 4 § 29.

### 1. Miscellaneous Fees

Plaintiff seeks miscellaneous fees for property inspections, appraisals, and environmental assessments of the Properties in the amount of $4,655.00. *See* St. Jean Decl. ¶¶ 9-10.[7] Lemans was obligated to pay for these expenses under the Note, as well as the Heisser Mortgage Agreement and Noyack Mortgage Agreement. Plaintiff has submitted documentation to support these costs, which the Court has reviewed and found appropriate. Moreover, all of the costs are reflected in the Loan Transcript.

### 2. Attorney's Fees and Costs

Plaintiff also seeks attorney's fees and costs. The St. Jean Declaration requests $22,909.66 in legal fees and costs. The Toriello Declaration, filed the same day, seeks a total of $43,131.45. All of the invoices reflected in the St. Jean Declaration fee calculation overlap with

---

[6] The Court notes that this term further provides that the aforementioned expenses "shall, until paid, bear interest at the rate applicable to principal hereunder . . . ." Plaintiff does not, however, seek interest on the miscellaneous fees.

[7] The St. Jean Declaration includes attorney's fees and costs in the "miscellaneous" category. Attorney's fees and costs are discussed in the next section.

the invoices reflected in the Toriello Declaration fee calculation, thus the Court only considers the Toriello Declaration as it is more complete. The attorney's fees described in the Toriello Declaration include $27,198.92 in billed attorney's fees, $2,443.53 in billed costs, and $9,039.00 in unbilled (as of August 31, 2011) fees and costs. The Court has reviewed the invoices and bills attached to both declarations.

### a. Hourly Rates

Courts within the Second Circuit determine an appropriate award of attorney's fees according to the standard of a "presumptively reasonable fee." *See Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183, 190 (2d Cir. 2008). This number should represent "what a reasonable, paying client would be willing to pay" for legal services rendered, and a court should consider the following factors in its calculation:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Id.* at 184. The "presumptively reasonable fee" is comprised of a "reasonable hourly rate multiplied by a reasonable number of expended hours." *Finkel v. Omega Comm'n Servs., Inc.*, 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008) (citations omitted). "The party seeking reimbursement of attorneys' fees must demonstrate the reasonableness and necessity of hours spent and rates

charged." *Id.* (citing *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136 (2d Cir.1983)).

To determine reasonable hourly rates, the Court notes this Circuit's adherence to the forum rule which states that district courts should generally use the prevailing hourly rates in the district where it sits. *See Polk v. N.Y. State Dep't of Corr. Servs.,* 722 F.2d 23, 25 (2d Cir. 1983). "[T]he burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing [market rates] in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 896 n.11, 104 S. Ct. 1541 (1984). The Court must also, "in exercising its considerable discretion," consider the factors enumerated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974)[8] and remain mindful that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill,* 522 F.3d at 190.

In 2011, the Second Circuit affirmed a district court decision holding that the prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour. *Konits v. Karahalis*, No. 10-CV-2157, 2011 WL 310318, 409 Fed. Appx. 418, 422-23 (2d Cir. 2011). Similarly, another court has observed that "reasonable fees in this

---

[8] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability"' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." 488 F.2d at 717-19.

district vary from $200 to $375 per hour for partners and $100 to $295 per hour for associates" and $70 to $80 for paralegals or legal assistants. *Penberg v. HealthBridge Mgmt.*, No. 08-CV-1534, 2011 WL 1100103, at *6-7 (E.D.N.Y. March 22, 2011). In cases such as this one involving mortgages and promissory notes, courts have held that slightly lower fees are appropriate. *See BH99 Realty, LLC v. Qian Wen Li*, No. 10-CV-0693, 2011 WL 1841530, at *7 (E.D.N.Y. March 16, 2011) (reducing hourly rates from $702-$735 to $250 for a partner; from $396-435 to $175 for an associate; from $319.50 to $150 for another associate; and from $180-202.50 to $80 for paralegals); *Bank of Am. v. Viders*, No. 10-CV-25, 2011 WL 4527419, at *3 (E.D.N.Y. July 26, 2011) (reducing hourly rates to typical rates for cases involving mortgages and promissory notes, i.e., $250 for partners, $175 for associates, and $80 for paralegals); *1st Bridge LLC v. 682 Jamaica Ave., LLC*, No. 08-CV-3401, 2010 WL 4608326, at *3 (E.D.N.Y. July 13, 2010), *adopted by*, 2010 WL 4607409 (E.D.N.Y. Nov. 4, 2010) (noting that $250.00 per hour was "on the higher end of the spectrum" for a similar matter) (citing *Kochisarli v. Tenoso*, No. 02-CV-4320, 2008 WL 1882662, at *7 (E.D.N.Y. April 24, 2008) ("for actions in this District involving mortgages and promissory notes attorney's fees have been approved in the range of $150 to $175 (for senior associates) and $200 to $250 for partners")).

Plaintiff seeks attorney's fees based on the following hourly rates charged by attorneys and staff at Holland & Knight LLP: $575 for work performed by partner John Toriello; $515 for work performed by partner Michael Michalowski; $395 for associate Patrick Sweeney; $225 for associate Katherine Skeele; $195 for legal assistant Shannan E. Whalen; $235 for managing clerk Glenn M. Huzinec; and $260 for chief managing clerk Elvin Ramos. The Toriello Declaration describes the educational background and work experience for the attorneys involved in this

action, all of whom, with the exception of Attorney Skeele, have experience with creditors' rights and foreclosure litigation. All of the attorney time billed was billed at a discounted rate to the attorneys' normal billing rate.

The hourly fees Plaintiff seeks are unreasonable for this type of case in the Eastern District of New York. Reasonable hourly rates for a case such as this involving mortgages, promissory notes and foreclosures have been referenced above in the *1st Bridge LLC*, *BH99 Realty LLC*, and *Viders* cases. The Court acknowledges receipt of the Report and Recommendation by Magistrate Judge Reyes in the case *U.S. Bank v. Crutch*, No. 09-CV-998, sent to the Court by Plaintiff, *see* DE 27, in which Judge Reyes recommended fees similar to those the Plaintiff is requesting here. The Court notes that Judge Reyes reached his conclusion in *Crutch* using hourly rates "in the New York market." Judge Reyes, sitting in Brooklyn, appears to have based his analysis on New York City fees and his determination is therefore distinguishable. In contrast, as observed by the court in *BH99 Realty, LLC*, the relevant geographical area for comparative ranges is not New York City, but, rather, the entirety of the Eastern District of New York. 2011 WL 1841530, at *7. The properties used to secure the loan here and upon which the Plaintiff seeks to foreclose are located in Farmingdale and Southhampton, New York – Nassau and Suffolk Counties. The Court also notes that the *National Law Journal* article counsel cites as support for its contention that its billing rates are in line with "the average billable rates for attorneys, paralegal, and legal staff with similar experience in the New York and Boston markets," *see* Torielli Decl. ¶ 15, is based on a survey of "the nation's 250 largest law firms," *see id.*, Ex. C at 2, and is therefore not indicative of reasonable rates charged in the Eastern District of New York.

Based on the foregoing, the Court, therefore, recommends that Plaintiff be awarded $275 per hour for work performed by Attorneys Toriello and Michalowski; $175 per hour for work performed by Attorneys Sweeney and Skeele; and $90 per hour for work performed by legal assistant Ms. Whalen. The Toriello Declaration does not state whether Mr. Ramos and Mr. Huzinec are attorneys. The description of the work these individuals performed is administrative in nature; therefore, the Court recommends that their work be charged at the $90 per hour rate applicable to legal assistants.

### b.  Hours Expended

To determine whether the number of hours spent by Plaintiff's counsel was reasonable, the Court must "'use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case.'" *Fox Indus., Inc. v. Gurovich,* No. CV 03-5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank,* 960 F.2d 1146, 1153 (2d Cir.1992)). A court should "exclude hours that were 'excessive, redundant, or otherwise unnecessary' to the litigation . . . ." *Cho v. Koam Medical Servs. P.C.,* 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983)). A party seeking an award of attorney's fees bears the burden to document "the hours reasonably spent by counsel, and thus must support its request by providing contemporaneous time records reflecting, for each attorney and legal assistant, the date, the hours expended, and the nature of the work done." *Id.* at 209 (internal citations, quotation marks, and alteration omitted).

The Court has reviewed the billing records submitted by Plaintiff and finds them to be reasonable.

For the reasons stated above, the Court finds that the following fees are appropriate:

| Invoice No.[9] | Hours Incurred by Attorneys Toriello and Michaelowski at $275/hour | Hours incurred by Attorneys Sweeney and Skeele at $175/hour | Hours Incurred by Ms. Whalen, Mr. Ramos, and Mr. Huzenic at $90/hour |
|---|---|---|---|
| 2617673 | .6 | 1.2 | 2.3 |
| 2626759 | .2 | 11.3 | 0 |
| 2639173 | .8 | 13.9 | 2.3 |
| 2653982 | .1 | 7.9 | .5 |
| 2662049 | 0 | 7.5 | .5 |
| 2670943 | 0 | 7.4 | .5 |
| 2679973 | 0 | 14.10 | 1.7 |
| Unbilled Time | .2 | 11.1 | 1.1 |
| Total: | 1.9 hours = $522.50 | 74.4 = $13,020.00 | 8.9 = $801.00 |

### c. Costs and Disbursements

Awards of attorney's fees "normally include those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987). In addition, the Note specifically provides for cost shifting. St. Jean Decl., Ex. 1 § 6.B. Plaintiff submitted invoices for costs totaling $2,488.10. The costs incurred include the following: $461.66 for a judgment and lien search and a declaration of condominium search; $395.42 for online research; $844.50

---

[9] All invoices are attached to the Toriello Declaration as Exhibit A. The unbilled time, attached to the Toriello Declaration as Exhibit B, does not have an Invoice Number.

for filing fees for the Complaint and Notices of Pendency; $86.62 for mailing and messenger services; $421.04 for copying costs; $276 for process server fees; and $2.86 for telephone calls. I have reviewed all of the charges and find that they consist of ordinary expenses associated with this type of action that a fee-paying client would typically pay.

For the foregoing reasons, the Court respectfully recommends to Judge Hurley that Plaintiff be awarded $2,488.10 in costs.

* * *

Accordingly, the Court respectfully recommends that Plaintiff be awarded $16,831.60 in attorney's fees and costs ($522.50 + $13,020.00 + $801.00 + $2,488.10) and $4,655.00 in miscellaneous fees, for a total of $21,486.60.

**B.      Foreclosure and Sale of the Properties**

A plaintiff is entitled to foreclose on a property if it demonstrates "'the existence of an obligation secured by a mortgage, and a default on that obligation.'" *1st Bridge LLC*, 2010 WL 4608326, at *3 (quoting *United States v. Fugle*, No. 00-CV-540, 2003 WL 251948, at *2 (W.D.N.Y. Jan. 25, 2003)); *accord BH99 Realty*, 2011 WL 1841530, at *4. Plaintiff has produced copies of the agreements reflecting the mortgages on the Properties, *see* Noyack Mortgage Agreement and Heisser Mortgage Agreement, St. Jean Decl., Exs. 2, 4, as well as evidence that Lemans defaulted on their obligations with respect to the underlying debt by failing to make required monthly payments beginning in October 2010. *See* Loan Transcript, St. Jean Decl., Ex. 5. The Court therefore concludes that Plaintiff is entitled to a foreclosure on the Properties. The Court respectfully recommends to Judge Hurley that the Properties be foreclosed and sold with the proceeds to be applied to the amount owed on the Note, including the

miscellaneous and attorney's fees set forth above, which, according to the Heisser Mortgage Agreement § 3.15 and the Noyack Mortgage Agreement § 29, are obligations secured by the Properties.

Accordingly I recommend that if the Court adopts the foregoing recommendations, that the Court sign a judgment of foreclosure and sale which is substantially similar to the Proposed Judgment submitted by Plaintiff, DE 16, Ex. 3.

## V.    CONCLUSION

Based upon the foregoing information, I respectfully recommend to Judge Hurley that Plaintiff be awarded damages as follows: (i) $366,228.07 in principal, accrued and late fees due on the Loan; (ii) interest in the amount of $59.98 per day from April 20, 2010 until the date judgment is entered; (iii) $21,486.60 in miscellaneous fees and attorney's fees and costs; and (iv) a judgment of foreclosure and sale. Plaintiff is also entitled to post-judgment interest on the money judgment "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System for the calendar week preceding[] the date of the judgment." 28 U.S.C. § 1961(a).

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Denis R. Hurley, and to the chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Hurley prior to the expiration of

the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 188 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**Counsel for the Plaintiff is directed to serve a copy of this Report and Recommendation on the Defendants forthwith and to file proof of service on ECF.**

**SO ORDERED.**

Dated: Central Islip, New York
March 2, 2012

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge